# Todd, *et al. v.* Interstate Mortgage & Bond Co.

Bill to Require Mortgagor to Affirm or Disaffirm a Sale, and for Foreclosure.

(Decided April 16, 1916.   71 South. 661.)

1. **Dower; Estoppel; Mortgage.**—The widow estopped herself as against the mortgagee to assert dower or quarantine right by joining with the heirs of the deceased husband in the execution of a mortgage on the lands of deceased husband after his death.

2. **Homestead; Estoppel; Mortgage.**—Under § 4191, Code 1907, the widow estopped herself to assert her homestead rights in the property, as against the mortgagee by joining with the heirs of her deceased husband in the execution of the mortgage on the lands after his death.

3. **Equity; Pleading; Construction.**—Where the original bill alleged foreclosure by the mortgagee, and its purchase of the two mortgaged parcels of land en masse, the widow and the heirs of the husband having mortgaged two tracts, one owned by the widow and the other by the heirs, the widow having joined in the mortgage only as surety, and the prayer was that the mortgagors elect whether they would affirm or disaffirm the sale under power, and, in the event of disaffirmanace, that the mortgage be foreclosed by appropriate decree, thus conceding the option of the mortgagor to disaffirm, the widow's right to the benefit of a proper foreclosure of the two tracts separately under the decree of the court asserted by cross bill became fixed, and she could not be deprived thereof by the dismissal of the original bill, or its amendment withdrawing the averments of sale en masse, and withdrawing the prayer that the mortgagor be required to elect, and the substitution of a prayer that the sale be confirmed by decree.

4. **Mortgages; Sale; Surety.**—Where a widow joined as surety in a mortgage made by the heirs of her husband, covering two pieces of property, one belonging to the heirs, and the other to the widow, she had the right to have the property of the heirs first sold on foreclosure of the mortgage for relief pro tanto of her own.

5. **Equity; Pleading; Prayer; Decree.**—Where the bill was against the mortgagors, a widow and the heirs of her husband, seeking to require them to elect whether they would affirm or disaffirm a sale under power, and the widow, who was surety for the heirs filed a cross bill which contained a prayer for general relief, but no prayer for relief by sale of the heir's property first for the relief of her own, it was proper for the court, upon suggestion made at bar, or ex mero motu, to decree a sale of the parcels in the order suggested by the fact that the widow was a surety.

6. **Same.**—The fact that a bill in equity contains a prayer for specific relief not authorized by the facts averred does not destroy the equity of the bill where there is a prayer under which relief may be granted.

7. **Estoppel; Judicial Position; Inconsistent Position.**—In order to come within the rule that a party who obtained or defeats a judgment by pleading or representing a thing or judgment in one aspect is estopped from giving it another aspect in a suit founded upon the same subject matter, the

[Todd, et al. v. Interstate Mortgage & Bond Co.]

election pleaded by way of estoppel must have been of some avail to the party against whom it is pleaded.

**8. Election of Remedies; Application of Princpial.**—A party must have actually at command two inconsistent remedies to make a case for the application of the principle by which a party concludes himself by an election between two remedies.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Bill by the Interstate Mortgage & Bond Company against Mary Annie Todd and others, to require respondents to elect whether they would affirm or disaffirm a sale made under power in the foreclosure of a mortgage, and in the event of a disaffirmance that the mortgage be foreclosed by appropriate decree, with cross bill by Mary Annie Todd. From a degree for complainant Mary Annie Todd appeals. Reversed and remanded.

CULLI & MARTIN, for appellant. O. R. HOOD, and E. D. SMITH, for appellee.

SAYRE, J.—R. T. Todd died intestate, seised in fee of a vacant lot on Turrentine avenue in the city of Gadsden, and this was all the real property he owned. His wife, appellant, owned a lot on Fourth street which had been improved by the erection thereon of three apartments. The family occupied a rented house in another part of the city. Intestate left surviving him appellant and six children, his heirs, one of them a minor. There has never been any administration of his estate, nor any assignment of homestead or dower. Shortly after his death, the widow and children, to secure a loan of money to the children, joined in the execution of a mortgage to J. B. Martin. This mortgage covered both the above-mentioned lots. The children erected two houses on the Turrentine avenue lot, and upon their completion the widow occupied, and continues to occupy, one of them as a dwelling, receiving and using the rents from the other for the support and maintenance of herself and family. Four or five years later the widow and her children, all now certainly of age, executed and delivered the mortgage under which appellee claims. This mortgage also covered both pieces of property. The agreement as to facts states that appellant received no part of the proceeds of the mortgage, into which she entered for the sole purpose of securing the loan to her children by pledging her Fourth street property. However, she executed the mortgage and the notes

thereby secured, assuming on the face of the transaction, and in fact so far as the mortgagee knew, equality of obligation with the heirs, and out of the proceeds the Martin mortgage was paid and discharged. This mortgage of latest execution contained apt words of conveyance and both special and general warranties applicable alike to both properties. Upon default there was a foreclosure under the power contained in the mortgage, and the mortgagee became the purchaser as it had a right to do under the terms of the security. The two properties were exposed for sale and purchased by appellee en mass at and for the sum of the mortgage debt and the expenses of foreclosure, a sum very materially less than the reasonable value of the property at the time. Afterwards appellant surrendered possession of the Fourth street property to appellee, as she had to do in order to retain her statutory right of redemption, but refused to surrender the Turrentine avenue lot, claiming to hold the latter by her right of quarantine and homestead. Thereupon appellee filed its bill, alleging the foreclosure and its purchase en masse, and praying that the mortgagors be required to elect whether they would affirm or disaffirm the sale, and, in the event of a disaffirmance, that its mortgage be foreclosed by appropriate decree pro confesso. Appellant answered, making her answer a cross-bill under the statute, praying that the foreclosure be set aside, that the Fourth street property be sold in separate parcels, that the Turrentine avenue property be set apart to her and her minor child —meaning, of course, the child who was a minor at the time of the father's death—as a homestead, that the last-named property be not sold or partitioned during her life, and for general relief. To this answer, as a cross-bill, a demurrer was sustained. Appellee then amended its bill by withdrawing the averment of a sale en masse and the prayer that defendants be required to elect, and introducing a prayer that the sale under the power be confirmed by decree and appellee let into possession of the Turrentine avenue property. The heirs allowed this amended bill to be taken as confessed; but appellant again answered by cross-bill, to which, as before, the heirs were made parties defendant, renewing substantially the prayer of her former answer. After demurrer sustained to this cross-bill, appellee again amended by averring that appellant had elected to affirm the sale under the power by joining the heirs in an action at law which the plaintiffs there sought to recover an amount alleged to be due to them

by reason that appellee had bid in the whole property for an amount considerably in excess of the indebtedness secured by the mortgage, which action had been determined in favor of appellee. This, we believe, is a fair summary of the proceedings prior to the submission for final decree. The cause being submitted for decree on the bill and its amendments, the answer, the decrees pro confesso against the heirs, and the agreed statement of facts—which, we may remark, does not seem to have been intended to cover facts shown by the pleadings not to be in dispute—the chancellor confirmed in all respects appellee's right under the foreclosure sale. The widow appeals.

(1, 2) By joining the heirs in the execution of the mortgage to appellee after the death of her husband, appellant estopped herself, as against the mortgagee, to assert either dower or homestead rights in the property. This, under our decisions, is clearly the case so far as the claim of dower or quarantine right is concerned.—*Jones v. Reese,* 65 Ala. 134; *Reeves v. Brooks,* 80 Ala. 26; *Lytle v. Sandefur,* 93 Ala. 396, 9 South. 260. We can perceive no valid reason why the same rule should not be applied to appellant's claim of homestead. One certain conclusive consideration affects the two cases alike. Whatever may have been the case at the time of the execution of the Martin mortgage, when appellee took the mortgage now in question the heirs were all of full age, and they and the widow owned among them the whole fee and were entirely competent to convey it by deed or mortgage. The statute (Code, § 4197) does provide that, where a decedent, at the time of his death, has no homestead exempt to him from levy and sale under process, the widow and minor child, or children, or either, shall be entitled to homestead exemption, or $2,000 in lieu thereof, out of any real estate owned by him, and that "in no case, and under no circumstances, shall the widow and minor children, or either of them, be deprived of homestead of $2,000 in lieu thereof if they or either of them apply therefor in manner as herein provided, before final distribution of the decedent's estate." But, as we indicated in *Chamboredon v. Fayet,* 176 Ala. 211, 57 South. 845, the language of this section in its present shape is broader than the true legislative purpose as it is to be learned from other parts of the statutory system of homestead exemptions and the decisions of this court, the true purpose of that part of the section which we have quoted being to deny that the widow or minor children

[Todd, et al. v. Interstate Mortgage & Bond Co.]

may be charged with laches in moving for an assignment of homestead, provided only they move before final distribution of the decedent's estate. It was never intended to lay down the rule that the widow and heirs, all having reached full age and being sui juris, may not, by conveyance and appropriate covenants in which they all freely join for valuable consideration, estop themselves at law as in equity thereafter to claim homestead in the property so conveyed.

(3, 5) The whole equity, then, of the original bill in this cause, the only reason why the remedy by ejectment would have been inadequate, lay in the averment that the separate parcels covered by the mortgage had been sold at foreclosure en masse, the concession by the complainant that this manner of sale left in the mortgagors an option to disaffirm, the prayer that the mortgagors be required to elect whether they would affirm or disaffirm, and, in the event of a disaffirmance, that the mortgage be foreclosed by appropriate decree. By her election to disaffirm, appellant's right to the benefit of a proper foreclosure under a decree of the court became fixed; and, having so elected, she became entitled further, not only to a sale of the property in separate parcels, but to a sale of them in a certain order. By the pleadings and proof it was made to appear that, while appellant was bound to appellee as a principal debtor, as between herself and the heirs she was a surety. On this ground it was due to her that the Turrentine avenue property be first sold for the relief pro tanto of her Fourth street property. These rights having been asserted by way of cross-bill, she could not be deprived of them by a specious amendment nor even by a dismissal of the original bill, and to this extent the cross-bill contained equity. Appellant did not specifically pray for a part of this relief, but her cross-bill contained a prayer for general relief, and upon suggestion made at the bar, or ex mero, it would have been proper for the court to decree a sale of the parcels in order suggested by the fact that appellant was a surety.—*Rosenau v. Powell*, 173 Ala. 123, 55 South. 789.

(6) To a certain extent appellant proceeded upon a different theory, it seems, though she was careful to aver and prove the fact of her suretyship. This appears from the prayer of her cross-bill, which has been stated. But the fact that a bill contains a prayer for specific relief not authorized by the facts averred will not destroy its equity, provided there is a prayer under which relief may be granted.—*Rosenau v. Powell, supra.*

(7, 8)  The amendments, whereby appellee first withdrew the prayer of its original bill for an election and then sought to foreclose the election appellant had made in her answer and cross-bill by averring the action at law, should not have been allowed to avail it anything.  These amendments, apart from the status of right and equity brought under consideration by appellant's answer and cross-bill, would have left the cause in the attitude of presenting to the court a question of purely legal cognizance. The equity of the bill in its last shape was refuted by the fact that appellant and her co-plaintiffs had taken nothing by their action at law.  In Herman on Estoppel it is said that:  "A party who obtains or defeats a judgment, by pleading or representing a thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject-matter."—Section 165.

To come within this statement of the rule of conclusiveness, the election pleaded by way of estoppel must have been of some avail to the party against whom it is pleaded.  He must have received some benefit under his election.—*Register v. Carmichael,* 169 Ala. 588, 53 South. 799, 34 L. R. A. (N. S.) 309, and cases there cited.  Appellant and her co-plaintiffs in the action at law, which rested necessarily and alone upon the allegation that appellee's bid was in excess of the amount secured by the mortgage, took nothing for the reason, we must assume upon the record, there was no such excess.  Plaintiffs in that action were pursuing a will-o'-the-wisp; there was no substance to the right under which they claimed.  To make a case for the application of the principle by which a party concludes himself by an election between remedies, the party must have actually at command two inconsistent remedies.—*Calhoun County v. Art Metal Construction Co.,* 152 Ala. 607, 44 South. 876; *Southern Railway Co. v. City of Attalla,* 147 Ala. 653, 41 South. 664.  In *American Freehold Land Mortgage Co. v. Pollard,* 120 Ala. 1, 24 South. 736, cited to this point by appellee, the mortgagee had bid in the property at its foreclosure sale at a price several thousand dollars in excess of the debt secured, and the ruling was that the mortgagor could not be heard to claim the excess while seeking to defeat the security.  And in the same case, reported in 127 Ala. 227, 29 South. 598, where it appeared that the mortgagor, in answer to the mortgagee's original bill, had elected to affirm under the terms then proposed, and afterwards

[Chambless v. Jones.]

the bill was amended to change the terms, it was held that the amendment set the mortgagor's election at large. In the same case it was held that the filing of the bill revived the right of election which otherwise would have been lost to the mortgagor; this upon the principle that the mortgagee, though in possession for a length of time that would have barred a bill by the mortgagor to avoid the sale, treated the mortgage as merely a subsisting security by filing its bill, such an act being entirely inconsistent with any pretension on its part that its possession had ripened into title. The principle brought into view by the cases to which we have referred lead to the conclusion that, whatever effect might otherwise have been attributed to appellant's unsuccessful lawsuit, the filing of the original bill in this cause gave appellant a right of election to affirm or disaffirm the voidable foreclosure, a right of which she could not be deprived after she had elected by answer and cross-bill to disaffirm and prayed for relief that became appropriate in that event.

The decree was affected with error. To the end that appellant may have her election to disaffirm the foreclosure sale made effectual and that the mortgage may be properly foreclosed by decree under the pleadings to be recast to develop the true equities of the cause, the court making such order, if any, in respect to the sale by subdivisions of the two parcels as may seem best in the circumstances, the decree will be reversed, and the cause remanded for further proceedings.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.