212 So.2d 831

**J. H. MORRIS, INC.**

v.

**INDIAN HILLS, INC., et al.**

1 Div. 416, 417.

Supreme Court of Alabama.

June 27, 1968.

Rehearing Denied July 25, 1968.

Kilborn, Darby & Kilborn, Mobile, for appellant.

Caffey, Gallalee, Edington & Loveless, Mobile, for appellee Ripps.

Lyons, Pipes & Cook, Mobile, for Indian Hills.

COLEMAN, Justice.

Complainant appeals from decrees declaring that a mortgage held by one of the respondents was superior to and took precedence over a mortgage held by complainant on the same land. The correctness of this ruling is the principal question for decision.

Complainant is J. H. Morris, Inc., a corporation, hereinafter referred to as Morris. The president is J. H. Morris. He will be referred to as J. H. Morris.

On this appeal, the contest is between complainant and the respondent, Meyer A. Ripps.

Another respondent is Indian Hills, Inc., a corporation, referred to as Indian Hills. The respondent, Huston Carter, is president of Indian Hills and acted for it in the transactions here involved.

The other respondent is Estates Development Corporation, referred to as Estates.

All parties, natural and corporate, apparently reside in Mobile County.

Complainant averred in its amended bill that Ripps owned certain land in Mobile County; that in early 1960 Ripps and Carter caused Indian Hills to be incorporated so that Ripps, by controlling Indian Hills, could use it to subdivide land for residential purposes and sell it so as to enjoy the benefit of capital gains treatment

in the sale of the land; that the capital of Indian Hills was at all times monies advanced by or for the benefit of Ripps; that, by deed dated August 3, 1962, Ripps conveyed to Indian Hills 19.6 acres of his land; that simultaneously Indian Hills executed to Ripps a purchase money mortgage for the purchase price, which was $50,000.00, and also for an additional $30,000.00 which Ripps loaned to Indian Hills to pay part of the costs of subdividing the land; that the total mortgage debt was $80,000.00; that the mortgage was recorded; that Ripps borrowed from a Mobile bank the $30,000.00 which he loaned to Indian Hills; and that he assigned the mortgage to the bank as security for the loan.

We interpolate here that the evidence shows that the mortgage was filed for record in the office of the Judge of Probate on August 8, 1962, which was six days after the mortgage date; that the assignment to the bank was filed for record in the same office on August 14, 1962; and that both instruments were duly recorded.

We interpolate further that the mortgage to Ripps provides that the mortgage debt shall be paid in semi-annual installments of $8,000.00 each, commencing February 3, 1963, and also provides:

"The parties hereto further agree that since the mortgagor intends to subdivide the property herein conveyed into 68 lots, the mortgagee agrees to release a lot upon the prepayment of $1250.00, which shall be applied against the next ensuing semi-annual payments."

When each of four of the lots were sold, $1,250.00 were paid to the bank and the lots were released from the mortgage. The only payments made on the mortgage debt were these four payments aggregating $5,-000.00.

Complainant further avers that it was in the business of grading and preparing land for subdivisions, including installation of gutters, sewer systems, and water systems; that, in furtherance of the plan for develop-

ment of the land, Indian Hills employed an engineer to survey it into lots; that Ripps and Indian Hills had an understanding that the land should be subdivided and in furtherance thereof, the engineers selected a portion of the land which was marked off into lots with streets laid out; that complainant was asked to bid for the construction and installation of these improvements, which complainant agreed to do; that it was agreed that $35,430.40 would be paid for water and sewer mains and $37,-575.43 for the streets and site improvements; that the final sum due should be divided by the number of lots and the quotient should be the amount payable per lot; that as the lots were sold such sum should be payable, but, if all lots had not been sold within one year from completion of the contract by complainant, the full sum should be payable; that, simultaneously with execution of the contract, Indian Hills executed to complainant a mortgage on the land to be improved; that, because the amount of the mortgage debt was not then determined, the final price would be arrived at at completion of the work; that delays were experienced by Indian Hills and Ripps· in obtaining necessary governmental approval of the subdivision; that it was ascertained that Ripps had constructed an access road, over the land conveyed, from other land on which he operated a drive-in theatre, and it was necessary to relocate this road; that, at request of Ripps and at his expense, complainant relocated the road; that, to aid and assist Ripps and Indian Hills, complainant agreed not to record its mortgage; that complainant performed its contract and became entitled to $79,865.80, which amount was inserted in the mortgage as the recited consideration and debt; that, on completion of the work, the plat of the subdivision was accepted by Indian Hills, Ripps, the bank, and the Planning Board and was filed for record and recorded; that Indian Hills built houses on and sold four of the lots, which were released from the Ripps mortgage on payment of $1,250.00 per lot; that Ripps and Carter did not pay complainant for the lots or inform complainant of the

sales; that, on learning of the sales, complainant recorded its mortgage on February 17, 1964; that Ripps, Carter, and Indian Hills thereupon embarked on a scheme to defraud complainant and destroy its rights under its lien for improvements and its mortgage. It appears that the 19.6 acres were subdivided into 68 lots and an undivided parcel.

Complainant avers "that by reason of the facts herein related as a matter of law," complainant's lien and mortgage became superior to the mortgage to Ripps, and that Ripps was estopped from asserting the priority of his mortgage over that of complainant; that, by a "spurious foreclosure proceedings," Carter, Ripps, and Indian Hills foreclosed the mortgage to Ripps and he bought in the property for $51,775.00, at a sale of the land as a block or unit, less and except the four lots previously sold as aforesaid; that the property was not offered for sale by lot but as a unit; that the property was sold for far less than its improved value and as a part of a scheme to deprive complainant of its lien.

Complainant prayed that the court set aside the foreclosure sale, declare complainant's mortgage superior to the mortgage to Ripps, and require an accounting; that the court grant to complainant, if it is not otherwise entitled to relief, redemption from Ripps of the mortgaged land if complainant's liens are inferior to the liens of Ripps, and for general relief.

After taking testimony ore tenus, the court declared that the mortgage to Ripps was and is a first mortgage and the amount secured by it is $90,414.26 on the date of trial, plus interest thereafter; that complainant's mortgage is a second mortgage and the amount of the debt is $91,937.59 on trial date, plus interest thereafter; that both mortgages are in default; that the first foreclosure sale to Ripps is invalidated and the title to the property and mortgage debt remain as though the sale had not occurred; that Ripps is not estopped to assert the priority of the first mortgage; that there is no

evidence of fraud on the part of Ripps; that Ripps and complainant are both entitled to foreclose their mortgages and the register is ordered to foreclose both mortgages at one sale and report the sale to the court.

The register sold the property under the decree and reported the sale to the court. The property was offered for sale lot by lot, and then as a whole. The highest bids on individual lot bidding were made by Ripps and aggregated $53,930.00. On offer of the property as a whole, Ripps was again the highest bidder at $55,000.00.

The report was ordered to lie over for five days. No exceptions to the report were filed. The court approved the sale and ordered the register to execute a deed to Ripps and that he might discharge his bid by crediting $55,000.00 against the amount owed on his mortgage. Complainant appealed and respondent, Ripps, has cross-assigned errors.

### Assignment 1.

Complainant assigns that the court erred in sustaining the demurrer of respondent, Ripps, to that aspect of the amended bill wherein complainant sought to have the court declare that Ripps, by reason of his alleged conduct, was estopped to assert the priority of his mortgage over complainant's mortgage.

Ripps demurred to the several so-called aspects of the bill stated in the demurrer as follows: to the aspect which seeks to set aside the foreclosure, to the aspect which seeks to declare complainant's mortgage superior to Ripps' mortgage, to the aspect which seeks judgment against Ripps for money collected on lot sales, to the aspect which seeks judgment for the alleged wrongful destruction of complainant's alleged lien, to the aspect which seeks redemption from Ripps, and to the aspect which seeks to require Ripps to account for any sums received by him on lot sales or an alleged sale of statutory redemption rights.

The court overruled the demurrer to the aspect seeking to set aside the foreclosure

and the aspect seeking accounting for money received on lot sales or the sale of right of redemption, and sustained the demurrer to the other aspects mentioned in the demurrer.

Complainant then amended by adding to paragraph 21(b) the averment that if complainant be mistaken in alleging that its lien became superior to Ripps' mortgage, then the alleged conduct of Ripps estopped him from asserting the priority of his lien as against complainant's mortgage, or that the alleged conduct of Ripps operated as a forfeiture of his rights under his mortgage, or, if no forfeiture has occurred, then the conduct of Ripps renders it unconscionable to allow him to enforce his security to the prejudice of complainant.

To the amended bill, Ripps refiled his demurrer and added a demurrer to that aspect which seeks a declaration that, by reason of his conduct, Ripps is estopped to assert the priority of his mortgage.

In ruling on the amended demurrer to the amended bill, the court sustained the demurrer "to the aspect setting up estoppel to assert priority of the first mortgage." The decree is silent as to all other aspects mentioned in the demurrer to the amended bill. Respondents answered. Ripps made his answer a cross bill praying that the court determine that his mortgage is superior to the rights of complainant; and in the alternative, if his mortgage was not validly foreclosed, that the court will order a judicial foreclosure of his mortgage, and for general relief.

In this state of the pleadings, the cause was submitted on the pleadings and testimony. In its decree, the court incorporated the following entry:

"7. No action or failure to act on the part of the Respondent M. A. Ripps in any way estops him to assert the priority of his first mortgage. (This question is considered by the Court under the Complainant's prayers for declaratory judgment and for general relief.)

"8. There is no evidence of any fraud or fraudulent scheme on the part of the Respondents, M. A. Ripps or Estates Development, Inc."

Complainant says in brief:

"The gist of the complainant's bill is for declaratory relief, a declaration that complainant's rights are superior to the rights of Ripps, that Ripps, by his conduct is estopped to assert a priority over complainant's lien. Ancillary (sic) Complainant sought to set aside the foreclosure sale, for accounting on lot sales, for declaration as to amounts necessary for redemption if complainant was inferior to Ripps to any extent, ect. . . . . ."

"As one approach to this contention that appellant's mortgage ought to prime the Ripps mortgage, or that the Ripps mortgage has been voluntarily subjected to the appellant's claims under its mortgage, appellant invokes for its protection the doctrine of estoppel, either by deed or in paid, (sic) or the doctrine of waiver. . . . ."

Complainant does not say that it was in anywise deprived of the opportunity to offer evidence to support its theory that Ripps was estopped to assert priority of his mortgage. The court expressly found that Ripps was not estopped to assert priority of his mortgage. As hereinafter stated, we are of opinion that this finding is justified by the evidence.

This court has said:

" . . . . We apply Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, to equity cases and 'will not reverse a decree unless in the opinion of the court, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected a substantial right.' Lightsey v. Stone, 225 Ala. 541, 52 So.2d 376, 385." McCary v. McMorris, 265 Ala. 493, 495, 496, 92 So.2d 319, 321.

In actions at law, it is established that sustaining a demurrer to a count or

counts of a complaint is harmless where plaintiff has the benefit of the same matter under other counts. Bradley v. Louisville & N. R. R. Co., 149 Ala. 545, 547, 42 So. 818; cases cited in Ala. Digest, ☞ 1040 (4). See Abrams v. Abrams, 225 Ala. 622, 625, 144 So. 828, 830, where this court said:

"The jurisdiction of the court was invoked in this cause for the purpose of canceling the two deeds, and for partition, and, the complainant showing no right to such relief, the bill would not be retained for the purpose of settling mere incidental matters of dispute between the parties, which are of purely legal cognizance. Therefore the error of the court in sustaining the demurrer to paragraph 10 of the bill involved no injury to the complainant, and this cause will not be reversed therefor. (Citation Omitted)"

■ In the instant case, complainant was permitted to offer evidence to support the aspect charging that Ripps was estopped to assert priority, the evidence supports a finding that Ripps was not so estopped, and the court expressly found that Ripps was not estopped. We are, therefore, of opinion that any error in sustaining demurrer to the aspect asserting estoppel against Ripps was without injury to complainant and that reversible error is not shown in Assignment 1.

*Assignments 2 and 3.*

■ These assignments complain of two decrees and are that "The trial Court erred in rendering its decree of" a certain date, respectively. Each decree contains more than one ruling. Neither assignment specifies the particular ruling which is assigned as error. Where there are several rulings, to any one of which the language of the assignment might equally apply, the assignment manifestly fails to designate the precise error to be reviewed. If the assignment is uncertain and indefinite as to the particular error complained of, this court will decline to consider it. Beasley-Bennett Electric Co. v. Gulf Coast Chapter, 273 Ala.

32, 35, 36, 134 So.2d 427. Assignments 2 and 3 present nothing for review.

*Assignments 4 through 8.*

These assignments are to effect that, for several reasons, the court erred in holding that the mortgage to Ripps is superior to the mortgage to complainant.

In these assignments, complainant relies on the insufficiency of the evidence to support the finding of the court. Ripps asserts in brief that complainant, the appellant, has not set out in its brief a condensed recital of the evidence given by each witness in narrative form as required by Supreme Court Rule 9.

Complainant has set out a narrative statement of the evidence in considerable detail, but it is not clear where the testimony of a witness begins and ends and is argumentative to some degree; for example, the narrative statement of the testimony contains the following statement:

"... . . . While the complainant maintained that the machinations of Ripps, Carter, Indian Hills and Estates were all fraudulent parts of the same scheme, during the course of trial it was apparent that the Estates people were not involved with whatever reprehensible schemes Ripps, Carter and Indian Hills were concerned with.

"Since Indian Hills, by Exhibit 24 (R. 225) has sold whatever its interests are in Vestavia and the rest of the tract to Estates, naturally whatever rights it holds are those as finally fixed with reference to complainant's rights and those of Ripps under his instruments."

Ripps says in brief:

"As mentioned above, the Appellant has not even attempted to comply with Rule 9 in setting out the testimony given by each witness in narrative form. Neither has he given all the evidence so as to *fully* present the substance of the witnesses (sic). Numerous omissions are pointed out in our Statement of the Facts. . . . ."

In support of his cross-assignments, Ripps has set out in his brief a narrative statement of the testimony of each witness, showing evidence omitted from complainant's statement of the evidence. Complainant, in reply to Ripps' brief on cross-assignments, has not challenged the correctness of Ripps' narrative statement of the testimony of each witness. Since Ripps' narrative statement appears to be full and correct, and is not challenged, it "will be taken to be accurate and sufficient for decision." Supreme Court Rule 9.

As stated above, the mortgage from Indian Hills to Ripps was filed for record August 8, 1962,

"The recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record, operates as a notice of the contents of such conveyance, or instrument, without any acknowledgment or probate thereof as required by law." § 102, Title 47, Code 1940,

In a case involving the question whether a mortgagee was estopped to foreclose a mortgage, this court said:

"  .  .  .  . When one knowingly suffers another, in his presence, to purchase property to which he has a claim or title, which he conceals, or as to which he is silent, he is deemed to waive the claim, and will not afterwards be permitted to assert it to the prejudice of the purchaser or his privies. There is, however, no aspect of this case, in which the rule can be applied, with reason or justice. The mortgage incumbering the lands, and which it is the object of the bill to remove as a cloud on the title of the appellant, at and prior to the purchase of the lands, was of record in the proper office. The record was the mode which the law required the mortgagee to pursue, to protect and perserve his title and security against subsequent alienation by the mortgagor to *bona fide* purchasers not having notice. When he had caused the mort-

gage to be recorded he had done all that the law requires, and all subsequent purchasers were bound at their peril to examine the record and take notice of the mortgage. The presumption is right and just that an intending purchaser examines the records touching the title of his vendor, and it is right and just to impute to him notice or knowledge of all the record may disclose. If the examination is not made, whatever of loss may result is attributable to his negligence, and not to the fault of him who has on the record a paramount claim or title. The law is well settled that one having a title of record, so long as he may do no affirmative act to mislead or deceive, is under no further duty to those who may acquire subsequent rights, and will not be barred from the assertion of his title. He may know or be informed that others are proposing or negotiating for rights and interests in property bound by his title of record. He is under no obligation to inquire for or hunt them up, and warn or apprise them of that which the record discloses, and it is their duty to ascertain.  .  .  .  ." Porter v. Wheeler, 105 Ala. 451, 457, 458, 17 So. 221, 223.

J. H. Morris, president of Morris, testified that he was first approached by Mr. James Garratt sometime in 1962 concerning work on the land in suit; that he signed the contract to do the work on September 27, 1962; the contract is dated September 28, 1962; at the same time, the mortgage executed to Morris by Indian Hills was delivered to J. H. Morris; the mortgage is dated September 28, 1962; the acknowledgment is dated January 27, 1964; at the same time, J. H. Morris received a note from Carter; the note was Indian Hills' note and it was endorsed by Carter personally; the mortgage to Morris was recorded February 17, 1964; the amount of the note and mortgage was filled in after the work was finished; "not too long" before Morris' mortgage was recorded, J. H. Morris had a conversation with Carter; about a month or two before the mortgage was recorded,

J. H. Morris heard that Ripps had a mortgage on the land. J. H. Morris testified:

"Q. Mr. Morris, after your contract was entered into with Indian Hills, dated September 28, 1962, did you have occasion to meet Mr. Ripps?

"A. No sir.

"Q. You never saw him personally?

"A. No sir."

He did enter into a contract with Ripps, through Carter, confirmed by letter from Ripps to Weaver, dated November 12, 1962, to build the exit road from the theatre; J. H. Morris was connected with Weaver in other matters; J. H. Morris did not actually have "face to face conversation or meeting with Mr. Ripps" until after "this litigation arose"; J. H. Morris understood that Carter was the sole owner of Indian Hills.

Morris did not file its mortgage for record until February 17, 1964. Apparently, the exact amount of the mortgage debt was not determined and inserted in the mortgage until January, 1964, after the work had been completed. We find no evidence to support the averment that, to aid and assist Ripps and Indian Hills, complainant agreed not to record its mortgage.

Complainant appears to rely on the signing of the subdivision plat by Ripps as showing that Ripps knew Morris was doing the work and yet did not warn Morris that Ripps held a mortgage on the land. Ripps had recorded his mortgage and was not bound to inquire for or hunt up J. H. Morris and tell him about the Ripps' mortgage.

"Several elements must be present before the courts will invoke an equitable estoppel. In 19 Am.Jur., Estoppel, § 34 equitable estoppel or estoppel in pais is defined as the principle of law 'by which a party who knows or should know the truth is absolutely precluded, both in law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.' (Citations Omitted)" Ellison v. Butler, 271 Ala. 399, 401, 402, 124 So.2d 88, 90.

■ We find no evidence that Ripps was under a duty to search for J. H. Morris and notify him personally of Ripps' mortgage. Moreover, it appears that Morris had full opportunity to examine the public records and thus learn of the Ripps' mortgage but did not do so. Morris was not excusably ignorant of the Ripps' mortgage. We, therefore, conclude that there is no basis to invoke the doctrine of estoppel or waiver against Ripps.

Ripps testified that he had no interest whatever in Indian Hills; that he was not active in its formation; and that he had never owned stock in Indian Hills, had never been an officer or director of the corporation, and had never exercised any control over any of its activities. We are of opinion that the evidence fails to show that Ripps controlled Indian Hills or that he engaged in a joint venture with it, although he did loan money to Indian Hills and sold to it the land here involved.

" 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto.' Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N.W. 763." Crescent Motor Co. v. Stone, 211 Ala. 516, 517, 101 So. 49, 51.

"As a general rule, in order to constitute a joint adventure there must be a

community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained." 48 C.J.S. Joint Adventures § 2, page 809.

"The rule as stated in Corpus Juris and quoted and cited in numerous cases is that, if money which a person loans to another to be used in a business enterprise is to be repaid by the borrower, whether the venture proves a success or a failure, the contract is ordinarily construed to be one of lending and borrowing and not of joint adventure, and the lender acquires no equitable interest in the property in which the money is invested, or liability to a third person for debts contracted by the borrower, even though under the agreement he is to share in the profits of the enterprise." 48 C.J.S. Joint Adventures § 1, pages 804 and 805.

So far as this record discloses, Indian Hills was bound to pay the mortgage debt in any event, and Ripps was not entitled to share in any profits realized by Indian Hills and was not bound to share in any losses which might be sustained by Indian Hills.

The evidence fails to show that Ripps had any part in the incorporation of Indian Hills or any control over, or right to control, its operations. Fraud on his part is not shown. The elements of a joint adventure do not appear from the proof.

■ We are not persuaded that the court erred in finding that Ripps' mortgage is superior to complainant's mortgage. Assignments 4 through 8 are not sustained.

### Assignment 9.

Complainant asserts that the court erred in directing that complainant's mortgage and Ripps' mortgage both be foreclosed at one sale.

In its original bill of complaint, complainant prayed that the court "will order a foreclosure of complainant's mortgage." After the court ruled on demurrers to the original bill, complainant amended its bill and eliminated the prayer for foreclosure of complainant's mortgage. Complainant does pray for general relief in the amended bill.

After the court ruled on demurrers to the amended bill, Ripps filed his answer and cross bill.[1] On the strict letter of Ripps' prayer for relief, he does not ask for foreclosure of his own mortgage, even if his attempted foreclosure be declared invalid, although he appears to ask for judicial foreclosure of "Complainant's" mortgage. We think Ripps intended to ask for foreclosure of "Cross-Complainant's" mortgage. In any event, appellant does not contend that the court erred in granting foreclosure of Ripps' mortgage. Appellant does contend, however, that the court erred in granting foreclosure of complainants' mortgage.

For consideration of the question presented by this assignment of error, we will

1. The prayer of Ripps' cross bill recites: "And the premises considered, the Respondent and Cross-Complainant, M. A. Ripps, prays:

"1. That the Court will determine the status of the parties hereto with respect to Respondent's mortgage and will determine that said mortgage was and is superior and prior to any rights of the Complainant and that said mortgage was validly foreclosed.

"2. If the Respondent and Cross-Complainant be mistaken in his contention that said mortgage was validly foreclosed, and the Court should find that said foreclosure contained defects which invalidate it, then this Respondent and Cross-Complainant prays that the Court will order a judicial foreclosure of Complainant's (sic) mortgage, will ascertain the amount due under said mortgage, including a reasonable attorney's fee, and will order a sale of the mortgaged property upon such terms and conditions and after such notice as the Court shall determine.

"3. And Respondent and Cross-Complainant prays for such other, further and additional relief as he is entitled to receive, the premises considered."

assume, without deciding, that the general prayer for relief in the cross bill is sufficient pleading to support a decree ordering foreclosure of Ripps' mortgage. See: Mutual Building & Loan Ass'n v. Wyeth, 105 Ala. 639, 17 So. 45; Fields v. Drennen & Co., 115 Ala. 558, 22 So. 114; Todd v. Interstate Mortgage & Bond Co., 196 Ala. 169, 71 So. 661. The question for decision is, did the court have power to order foreclosure of complainant's mortgage without complainant's consent.

■ Ripps says ". . . . Appellant raised no objection in the lower Court to the foreclosure of his mortgage." It is elementary that, on appeal, we are confined to that which appears in the record before us. The record does not disclose any action on complainant's part asking for or consenting to foreclosure of its mortgage. If a second mortgagee must consent to a foreclosure of his mortgage in order to authorize the court to order the second mortgage to be foreclosed, the consent of the second mortgagee must be shown by the record if such a decree is to be sustained on appeal against appropriate assignment of error.

Complainant's elimination of the prayer for foreclosure of its mortgage, by amending its bill, appears to negate the idea that complainant consented to foreclosure of its mortgage.

Text writers have said:

"As a general rule, neither the mortgagor, a judgment creditor, nor any other third person having an interest in the premises can compel a mortgagee to proceed for the foreclosure of his mortgage, although past due, if he does not choose to do so, although some exceptions to the rule have been recognized. A junior mortgagee or lienholder has no separate or independent equity to compel the foreclosure of a senior mortgage." 59 C.J.S. Mortgages § 488, page 772.

"Neither a mortgagor nor a senior or junior encumbrancer can compel the holder of a mortgage to foreclose it in the absence of a statute authorizing such action." 37 Am.Jur., Mortgages, § 534, page 35.

The Supreme Court of Arizona has said:

". . . . Neither mortgagor nor a senior or junior encumbrancer can compel the holder of a mortgage to foreclose it, in the absence of a statute authorizing such action; the only right of the mortgagor being to tender the amount due on the mortgage and ask that it be canceled. Kinloch v. Savage, 17 S.C.Eq. (Speers) 464; White v. Lucas, 46 Iowa, 319; 27 Cyc. 1547." Mounce v. Wightman, 29 Ariz. 567, 243 P. 415, 416, 44 A.L.R. 754, 756.

This court has said:

"A junior mortgagee has no separate or independent equity to compel the foreclosure of a senior mortgage. Lehman v. Gunn, 124 Ala. 213, 27 So. 475, 51 L.R.A. 112, 82 Am.St.Rep. 159; Ware v. Hamilton Brown Shoe Co., 92 Ala. 145, 9 So. 136; Kelly v. Longshore, 78 Ala. 203. . . . . " Grace v. Montgomery, 207 Ala. 188, 189, 92 So. 412, 413.

". . . . The remedies for the collection of the debt are those belonging to the mortgagee, which he may pursue and as to which the mortgagor cannot compel an election. (Citation Omitted)" McMillan v. Beebe, 232 Ala. 350, 351, 168 So. 146, 147.

The opinions we have read consider the right of a junior encumbrancer to compel foreclosure of a senior encumbrance and are clear to effect that, except in exceptional circumstances, the junior encumbrancer cannot compel foreclosure of the senior lien. Ripps relies on a statement in 10 Thompson on Real Property (Permanent Edition 1940), § 5196, at page 126, (See Revised Edition, § 5166), to effect that when all encumbrances are due, and all encumbrancers are parties, and the circumstances show that the interests of mortgagor and mortgagee require it, "the court

will order a sale of the entire encumbered property"; citing cases decided by the United States Supreme Court. These cases, as we understand them, deal with sale of the entire mortgaged property rather than the foreclosure of both senior and junior mortgages in one sale. In Shepherd v. Pepper, 133 U.S. 626, 10 S.Ct. 438, 33 L.Ed. 706, the court does approve the joint foreclosure sale of two mortgages covering a house and lot, where each mortgagee appears to have had a first lien on part of the lot on which a single house stood and a second lien on the remainder of the lot, respectively. In *Shepherd*, also, the principal point of controversy was whether to sell the entire lot at one sale or to sell it in separate parcels. Mr. Justice Miller dissented on this point.

In Bruckman v. Healy, 126 Or. 129, 268 P. 1001, the court modified a decree which provided that the mortgagor's undivided two-thirds interest in the land covered by one mortgage, and his undivided five-eighteenths interest in the same land covered by the other mortgage, be sold at a single sale and the proceeds be applied to payment of the entire "judgment" which was the total debt covered by both mortgages. Prior to suit, both mortgages had been sold and assigned to the same plaintiff. In ordering separate foreclosure sales, the court said:

" . . . . In the instant case it must be borne in mind that we are not dealing with a mortgage covering different parcels of land. Neither were the mortgages given to secure the same debt. They represent separate and distinct transactions. We think the mortgagor is entitled to exercise his right of redemption under each mortgage. If the property be sold in the manner provided by the decree, this valuable right which the statute affords to him will be destroyed, as he could only redeem by paying the amount of the entire judgment. The right to redeem is a favorite of equity: Caro v. Wollenberg, 68 Or. 420, 136 P. 866. Furthermore, if the sale be made as contemplated, it would result in hypothecating one mortgage for the debt secured by the other: Peck v. Hapgood, 10 Metc. (Mass.) 172. . . . ." (126 Or. at 132 and 133, 268 P. at 1002.)

We are of opinion that the right to foreclose complainant's mortgage in the instant case was a right which belonged exclusively to complainant and that complainant cannot be compelled to exercise that right against its will. We have examined the authorities relied on by Ripps, but we do not think that any of them holds to the contrary.

Ripps has the right to have his mortgage foreclosed. We do not think he has the right to have complainant's mortgage foreclosed without complainant's consent. Ripps' mortgage is senior to complainant's mortgage, but, when Ripps took his mortgage he knew that the mortgagor had the right to execute a second mortgage. Ripps still has the same rights under his mortgage which he received at the time his mortgage was made He is entitled to those same rights but to nothing more.

■ Accordingly, we are of opinion that the decree ordering foreclosure of complainant's mortgage is due to be reversed and that the cause should be remanded with directions that the court order the foreclosure of Ripps' mortgage alone. Having removed from its amended bill its request to foreclose its mortgage, and having raised on appeal the objection that its mortgage was ordered foreclosed without its consent, complainant is not entitled to a decree ordering foreclosure of its mortgage.

*Assignments 10, 11, and
13 through 18.*

We pretermit consideration of these assignments which complain of the manner in which the court ordered the sale to be conducted.

*Cross-assignments.*

Ripps asserts that the court erred in setting aside and invalidating the fore-

closure sale to Ripps, held April 30, 1964, under the power of sale in his mortgage.

The reason relied on by complainant to support the ruling of the court is the fact that, at the sale in 1964, the auctioneer offered the property in bulk and not lot by lot, with alleged, consequent injury to complainant.

When the mortgaged land consists of widely separated lots, some of which are dedicated to separate and distinct uses, and are sold by the mortgagee, at one time en masse, and by that means are caused to bring a sum much less than their real value, equity should avoid the sale and let the complainants in to exercise their equity of redemption. A mortgagee is, in a sense, a trustee for the mortgagor, and, in exercising the power of sale contained in the mortgage, the mortgagee must not disregard the rights of the mortgagor. The rule requiring that separate parcels be offered for sale separately arises out of the reasonable presumption, sanctioned by observation and experience, that property in distinct parcels, distinctly marked for separate and distinct enjoyment, will produce more when sold in parcels· because the sale is thus accommodated to the probable wants of the purchasers. Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain. When a sale and purchase en masse are had under the power of sale contained in a mortgage, the mortgagor, if the purchaser acquires the property at a sum disproportionate to its real value, may, by seasonable action, have the sale annulled. Dozier v. Farrior, 187 Ala. 181, 65 So. 364.

In a court of law, a power of sale is merely a part of a legal contract to be executed according to its terms. In a court of equity, it is quickened with the elements of a trust, and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution to the end that the mort-

gagor's property may be disposed of to his pecuniary advantage in the satisfaction of his debt. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 638, 87 So. 105.

The reason for the rule requiring property covered by a mortgage or lien, which property is in separate parcels distinctly marked for separate and distinct enjoyment, to be first offered for sale in parcels rather than en masse, is that a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all. Kelly v. Carmichael, 217 Ala. 534, 537, 538, 117 So. 67; Lee v. Macon County Bank, 233 Ala. 522, 172 So. 662.

This rule applies where the property covered by the mortgage is separated into several distinct tracts or lots, either by natural boundaries, by the way in which it is platted or laid out, or by the fact that the parcels are not contiguous, and inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor. Kelly v. Carmichael, supra.

In absence of statute, the effect of a sale under the power en masse, under circumstances where it is to the interest of mortgagor to have the property sold in separate parcels, is not to render the sale void, but irregular and voidable on direct attack by bill in equity filed by the mortgagor, who must show that the trust incident to the exercise of the power has been abused and that he has suffered detriment in the undue sacrifice of his property, or that his right of redemption has been unduly hampered. Rudisill v. Buckner, 244 Ala. 653, 656, 15 So.2d 333.

Ripps says the foreclosure under the power should not have been set aside

because complainant has not shown proof of damage to it as a result of the sale en masse.

The witness, Lyon, admittedly an expert real estate appraiser, testified:

"Q. But offering them individually, lot by lot, you do have an opinion they would have brought $1000.00 to $1200.00 per lot?

"A. Yes sir."

Sixty-four lots at $1,200.00 per lot would have brought $76,800.00. Lyon testified that the six-acre parcel would have brought $9,000.00, as we understand his testimony.

■ The substance of Lyon's testimony is that a sale by parcels would have brought in the neighborhood of $80,000.00. The sale en masse brought $51,775.00. We think the court was justified in finding that injury resulted from selling en masse instead of by separate parcels, i. e., lot by lot. The fact that the later offering, lot by lot, at the sale under order of the court, brought bids aggregating only $53,930.00 does not affect the correctness of the finding because this later fact was not known to the court when the court rendered its decree.

Ripps says he was under no duty to Morris, the second mortgagee, to offer the land for sale lot by lot. In Kelly v. Carmichael, 217 Ala. 534, 538, 117 So. 67, this court said:

" . . . . And this rule . . . . inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor . . . . "

■ Morris was a party who had acquired rights in subordination to the mortgage by a conveyance from the debtor, Indian Hills. We hold that the rule as to sale en masse applies to Morris and Ripps did owe a duty to Morris. Morris is not a simple contract creditor as was the cross-complainant in Steed v. Carmichael, 223 Ala. 193, 134 So. 885.

■ Ripps asserts that where a mortgage conveys an entire tract, which is subdivided after the mortgage is made, the mortgagee has no duty, on foreclosure, to offer the property in parcels or by lots, citing 61 A.L.R.2d 567. In some circumstances, this rule would probably obtain, but the mortgage to Ripps recites that the mortgagor intends to subdivide the property and that the mortgagee agrees to release a lot on payment of $1,250.00. Four lots were released from the mortgage according to this provision. We think that Ripps is bound by the rule which requires a mortgagee to offer the property for sale lot by lot.

■ Neither do we think Morris was required, prior to the sale, to request that the property be sold lot by lot. In affirming a decree in which the trial court sustained a demurrer to a bill to enjoin foreclosure, this court said:

" * * * it will be assumed, in the absence of positive averments to the contrary, that the mortgagee intends to offer the property for sale in such sort as that it will not be unwarrantedly sacrificed. Moreover, assuming that the several parcels or tracts of land covered by the mortgage are so situated that they can be conveniently sold and conveyed separately, or that the land has been laid off in parcels for separate and distinct enjoyment, if the mortgagee abuses the power of sale and sacrifices the property by a sale en masse, the mortgagor has his remedy in equity. Dozier v. Farrior et al., 187 Ala. 181, 65 So. 364; Mahone v. Williams, 39 Ala. 202; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67." Ewing v. Bay Minette Land Co., 232 Ala. 22, 25, 166 So. 409, 411.

Ripps says also that, in absence of an offer by Morris to do equity, the court should not have set aside the foreclosure under the power, citing Cunningham v. Macon & Brunswick R. Co., 156 U.S. 400, 15 S.Ct. 361, 39 L.Ed. 471; Steed v.

Carmichael, supra; and Harris v. Bradford, 245 Ala. 434, 17 So.2d 145.

There is a statement in *Cunningham* that the holders of bonds secured by a second mortgage cannot equitably be allowed to void a sale under the first mortgage without tendering reimbursement of the amount of the first mortgage. *Cunningham* involved conflicting claim by holders of railroad bonds issued under state statutes. Apparently a sale under the first mortgage had been made "nearly two years" prior to the filing of the bill by the second mortgage bondholders. In denying their claim, the court said, inter alia:

". . . . No offer to pay the amount of the first mortgage was made prior to the purchase of the property by the defendants, and their title cannot now be divested, even if such an offer were made. We think the complainants are not entitled to the relief which they claim, and that the property passed to the defendant free from any lien under the statutory mortgage arising from the act of 1866 or 1870, even if from the latter any such mortgage ever resulted." (156 U.S. at page 425, 15 S.Ct. at page 367)

We do not think *Cunningham* is in point.

In Steed v. Carmichael, supra, and Harris v. Bradford, supra, the appeals were from decrees sustaining and overruling demurrers, respectively, to bills to set aside foreclosures.

The appeal in the instant case is not from a decree ruling on a demurrer. The decree ruling on the demurrer to the amended bill, in the instant case, is silent with respect to the sufficiency of the bill except as to the aspect setting up estoppel against Ripps to assert priority of his mortgage. The court sustained demurrer to that aspect and Ripps cannot complain of that ruling because it is favorable to him. As he concedes in brief, ". . . . the Demurrers were inadvertently not ruled upon."

 Whatever may be the rule requiring a party, seeking to exercise the equity of redemption, to aver a willingness to do equity when his bill is tested by demurrer, the cases cited by Ripps do not hold that setting aside a foreclosure sale is error merely because there is no offer to do equity averred in the bill. We do not reverse for that reason here.

We are of opinion that the cross-assignments are not well taken and that, as to them, the decree should be affirmed.

On appeal, affirmed in part, and, in part, reversed and remanded with directions.

Affirmed on cross-appeal.

LIVINGSTON, C. J., and SIMPSON and KOHN, JJ., concur.