These appeals, in essence an appeal and cross-appeal, arise out of the judgment entered in five cases that were consolidated for trial. A preliminary sketch of the factual background of the five cases is necessary as a prerequisite to understanding these appeals.
Mac R. and Pat A. Gillespie owned a 4.1 acre tract of land which they deeded to James Moore Sons Builders, Inc., under a contract with Moore Builders for the construction of a house on the Gillespies' tract of land for the sum of $46,000. The deed contained a provision that the property be conveyed back to the Gillespies by warranty deed upon the completion of construction of the house and payment of the cash due at closing in accordance with a written contract between the Gillespies and Moore Builders. The provision in that deed reads as follows:
 The property herein conveyed is to be conveyed back to the Grantors by warranty deed upon completion of the construction of the house on said property by the Grantee, and upon payment by the Grantors of the cash due at closing, in accordance with the terms and provisions of the "Uniform Real Estate Sales Contract" entered into by the Grantors and Grantee on January 16, 1978.
 To have and to hold unto the said Grantee, its successors and assigns, subject to the aforesaid agreement.
It was recorded the next day and the contract was recorded later.
Moore Builders mortgaged the property to Central Bank of Alabama, N.A., as security for a $40,000 construction loan, the entire proceeds of which it drew from the bank. When the house was substantially completed, the Gillespies moved in. Moore Builders failed to pay some $26,000 in bills for materials, fixtures or work used in construction of the house. Because the amount of these bills and the principal and interest due on the bank's construction loan exceeded a $46,000 permanent loan commitment the Gillespies had secured, they were unable to close the permanent loan.
Moore Builders and its principal officer, Charles Phillip Smith, were later adjudicated bankrupt.
Four of the actions were filed by those seeking to establish and to enforce mechanics' and materialmen's liens against the Gillespies' property. The bank and the Gillespies were named as defendants. The fifth action was the Gillespies', seeking an adjudication of their interest in the property and damages against Charles Smith, President of Moore Builders, Moore Builders, and Central Bank of Alabama, N.A. The Gillespies sought damages against Smith, Moore Builders and the Bank on the bases that: (1) they had undertaken a joint venture in the construction of the house; (2) the Bank undertook to oversee that proper application of the proceeds of the loan to Moore Builders was made but negligently failed to discharge this duty, thereby damaging the Gillespies; and (3) the Gillespies were entitled to a lien for money spent by them in completing and preserving the house. *Page 37 
Central Bank sought to have the trial court find it had a good and valid mortgage on the property; enter judgment against Moore Builders for the debt secured by that mortgage; declare the Bank's interest superior and prior to other claims; and to foreclose the mortgage by judicial decree.
The cases consolidated for trial, as noted earlier, were tried in two segments. A jury was empaneled to try the Gillespies' action against the Bank, Moore Builders and Smith, and to try factual issues in the other cases. Judgment was entered on a jury verdict against the Bank for damages on the theory the Bank was a joint venturer in the project. The trial court established six materialmen's liens; established a lien on the property in favor of the Gillespies to be on a parity with the other materialmen's liens; entered judgment in favor of the Bank for the mortgage debt plus interest; found the Gillespies had a homestead interest in the property and ordered that it be sold and distribution of the proceeds be made according to the following priority: (1) The Gillespies' homestead interest; (2) the Bank's mortgage debt; (3) the Gillespies' and other materialmen's liens on a pro rata basis.
The Bank appeals on the bases that it should not be treated as a joint venturer and the Gillespies should not have a homestead interest in the property.
The Gillespies appeal on the bases that they were entitled to regain full and complete title upon payment of $46,000; the materialmen's liens attached only to Moore Builders' interest in the property, not the Gillespies', and the Bank's mortgage, as a joint venture asset, was subject to satisfaction of the other liens. We will consider these issues in the order listed above.
The Gillespies' joint venturer theory rests on such matters as: rights to inspect the construction reserved by the Bank in its preprinted loan agreement; undercapitalization of Moore Builders; and the relationship between Smith and the Bank for the purpose of obtaining construction financing for Moore Builders. The Bank countered this theory tactically by motion for directed verdict, written requested instructions to the jury, and motion for judgment notwithstanding the verdict; all of which were denied. We are unable to discern anything from the record to indicate any relationship between Central Bank and Moore Builders other than lender-borrower and mortgagee-mortgagor. The right to inspection reserved in the loan agreement is one of the normal devices employed to protect a security interest in transactions similar to the one here under examination. The other aspects of the arrangement apply in construction financing arrangements quite frequently and are not unusual.
The Gillespies argue that Central Bank was to share Moore Builders' profits. This is a sophistic manner of stating that Moore Builders had to pay interest on the mortgage debt out of its profits. As this court observed in denying joint venturer status in another case:
 "The rule as stated in Corpus Juris and quoted and cited in numerous cases is that, if money which a person loans to another to be used in a business enterprise is to be repaid by the borrower, whether the venture proves a success or a failure, the contract is ordinarily construed to be one of lending and borrowing and not of joint venture, and the lender acquires no equitable interest in the property in which the money is invested, or liability to a third person for debts contracted by the borrower, even though under the agreement he is to share in the profits of the enterprise." 48 C.J.S. Joint Adventures § 1, pages 804 and 805.
 So far as this record discloses, Indian Hills was bound to pay the mortgage debt in any event, and Ripps was not entitled to share in any profits realized by Indian Hills and was not bound to share in any losses which might be sustained by Indian Hills.
J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 452,212 So.2d 831 (1968). Substitute "Moore Builders" for "Indian Hills" and "Central Bank" for "Ripps," and the last statement applies equally as well to *Page 38 
this case. Under the facts of the case we are reviewing, the Bank cannot be held to be a joint venturer with any other party to these actions.
The Gillespies also proceeded on a theory that Central Bank breached a duty it undertook when it failed to see to the proper application of the proceeds of the construction loan. The trial court denied relief on this theory; however, the Gillespies do not raise this issue in their appeal, but only in response to the Bank's; it is not in issue in the latter's. Therefore, it is not properly before this court and cannot be made the basis of error in connection with the trial court's treatment of it.
With regard to the homestead award, the trial court erred. Under the arrangement whereby the Gillespies deeded their property to Moore before construction, the Gillespies relinquished all property rights in the tract, retaining only contractual rights to enforce reconveyance of the land by Moore. By conveying all ownership interests in the property, the Gillespies precluded their right to assert a homestead exemption in it.
"It is manifest that ownership, entire or partial, in fee or for a term, is one of the essentials of rightful claim of homestead exemption. If there is no ownership, there is . . . no occasion or field of operation for the claim of exemption."Beard v. Johnson, 87 Ala. 729, 6 So. 383 (1889). See also 87 A.L.R. 511; Code 1975, § 6-10-2.
The Gillespies first sought to have the court reconvey title in the property to them in their motion to alter or amend the judgment. Because this relief was not sought initially in their action, the trial court properly denied the motion. As noted inGulf Oil Corporation v. Spriggs Enterprises, Inc.,388 So.2d 518 (Ala. 1980): "But more basically, one cannot have a decree for specific performance and damages for breach of the same contract." In light of the fact the Gillespies sought and recovered damages they waived any right to have the property reconveyed under the contract. Therefore, the trial court's action in refusing to grant that relief was correct.
The Gillespies' other contentions to the effect that the materialmen's liens did not attach to the retained rights in the property, and that Central Bank's mortgage was an asset of the joint venture, are answered in the negative by force of the reasoning of the issues discussed. This cause is due to be remanded to the trial court for effectuation of the relief granted by the judgments below except that which is altered by this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
FAULKNER, ALMON, BEATTY and ADAMS, JJ., concur.