Bobby N. Floyd is president of Diversified, Inc. Floyd and Diversified sued Kristie Wilson and Universal Surety of America ("Universal"), alleging negligence. The trial court dismissed the complaint, holding that the plaintiffs' negligence claim was barred by the statute of limitations. The Court of Civil Appeals, on December 17, 1999, affirmed, without an opinion. Floyd v. Wilson (No. 2981342), 789 So.2d 257
(Ala.Civ.App. 1999) (table). We granted the plaintiffs' petition for certiorari review. We affirm the judgment of the Court of Civil Appeals insofar as it relates to Floyd's claim, but we reverse that judgment insofar as it relates to Diversified's claim.
Diversified owned property located at 2846-48 40th Avenue North, in Birmingham. In June 1996, Diversified sold that property to Trantham Enterprises, Inc., receiving $3,000 cash and taking a $22,500 note secured by a mortgage. The mortgage was recorded in the Probate Court of Jefferson County. In August 1996, Trantham sold the property to James Lay doing business as Kenco Investments.
Kristie Wilson was a notary public whose notary bond was underwritten by Universal. On January 10, 1997, someone presented to her for notarization a document *Page 305 
styled "Full Satisfaction of Mortgage," which purported to recognize full payment of Trantham's debt to Diversified that was secured by the mortgage on the property located at 2846-48 40th Avenue North. That document contained a signature purporting to be that of "Joel Williams," as "Vice President" of Diversified. The acknowledgment, however, described an entirely different person as the signatory. It stated:
 "I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that Bobby N. Floyd, whose name as President of Diversified, Inc., is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day, that, being informed of the contents of this instrument, he, in his capacity as such officer and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date."
Wilson notarized the instrument, and it was recorded in the Jefferson Probate Court on January 10, 1997. In his complaint, Floyd alleged that he "was not present at the signing of the `Full Satisfaction of Mortgage' and had never authorized anyone to sign such a document." He further alleged that he "has always been the sole shareholder, director, and officer of Diversified and has never authorized anyone to perform any duties for Diversified."
We must take the allegations of the complaint as true when we consider whether the complaint was sufficient to withstand a motion to dismiss.Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985). According to the complaint, no one other than Floyd had any authority to sign a satisfaction for the corporation. Therefore, we must assume the "satisfaction" signed by "Joel Williams" as "Vice President" was an instrument "which purports to be the authentic creation of its ostensible maker, but . . . is not because the ostensible maker is fictitious," § 13A-9-1(4), Ala. Code 1975 (defining "falsely made"), and was thus a "forged instrument" (see § 13A-9-1(7), defining "forged instrument" as "[a] written instrument which has been falsely made"). Thus, the "Joel Williams" signature must be taken as a forgery.
Colonial Bank, relying upon property records (including the forged satisfaction) indicating that Lay held clear title to the property, lent money and took a mortgage covering that property. Colonial Bank eventually foreclosed on the mortgage, on July 14, 1998, and recorded a "Foreclosure Deed" on July 16, 1998. The plaintiffs allege that on September 29, 1998, Colonial moved to intervene in a lawsuit that involved Floyd and Diversified and in that lawsuit sought to have its mortgage declared superior to Diversified's mortgage. Diversified claimed that it had been unaware of the recorded "satisfaction" and maintained that it held a superior mortgage on the property. That proceeding has been resolved on terms that are not indicated by the record in this present case.
On February 8, 1999, Floyd and Diversified sued Wilson, claiming she had negligently breached her duty as a notary public, and Universal, claiming it was secondarily liable for Wilson's negligent conduct. Wilson and Universal both moved to dismiss the complaint on the basis that the plaintiffs' claim was barred by the two-year statute of limitations applicable to negligence claims. § 6-2-38(l), Ala. Code 1975. They argued that the plaintiffs' claim had accrued on the day Wilson notarized the purported satisfaction of the mortgage, i.e., January 10, 1997; therefore, they argued, the last day for filing a *Page 306 
complaint alleging wrongful notarization would have been January 10, 1999. Wilson and Universal also both moved to dismiss the complaint insofar as it stated a claim on behalf of Floyd, based on the defense that Floyd, as president of Diversified, had retained no interest in the property and that the only party injured by the alleged negligence was Diversified, the actual owner of the property. The trial court granted Wilson's motion to dismiss the complaint on June 22, 1999, and granted Universal's motion to dismiss on July 26, 1999.
The Court of Civil Appeals affirmed the judgment of the trial court. We affirm the judgment of the Court of Civil Appeals insofar as it relates to Floyd's claim against Wilson and Universal, because Floyd has no individual interest in the property owned by Diversified. However, we reverse the judgment of the Court of Civil Appeals insofar as it relates to Diversified's claim, and we remand the cause for that court to order further proceedings consistent with this opinion.
Diversified argues that the judgment of the Court of Civil Appeals conflicts with J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443,212 So.2d 831 (1968). In that case, the plaintiff, J.H. Morris, Inc., appealed from a judgment holding that the mortgage held by the defendants was superior to the plaintiff's mortgage on the same property. This Court addressed the rights of parties with interests in the same property:
 "`The mortgage incumbering the lands, and which it is the object of the bill to remove as a cloud on the title of the appellant, at and prior to the purchase of the lands, was of record in the proper office. The record was the mode which the law required the mortgagee to pursue, to protect and preserve his title and security against subsequent alienation by the mortgagor to bona fide purchasers not having notice. When he had caused the mortgage to be recorded he had done all that the law requires, and all subsequent purchasers were bound at their peril to examine the record and take notice of the mortgage. . . . [I]t is right and just to impute to [one intending to purchase the property] notice or knowledge of all the record may disclose. If the examination is not made, whatever of loss may result is attributable to his negligence, and not to the fault of him who has on the record a paramount claim or title. The law is well settled that one having a title of record, so long as he may do no affirmative act to mislead or deceive, is under no further duty to those who may acquire subsequent rights, and will not be barred from the assertion of his title. He may know or be informed that others are proposing or negotiating for rights and interests in property bound by his title of record. He is under no obligation to inquire for or hunt them up, and warn or apprise them of that which the record discloses, and it is their duty to ascertain.. . .'"
282 Ala. at 450, 212 So.2d at 838 (quoting Porter v. Wheeler, 105 Ala. 451,457-58, 17 So. 221, 223 (1895) (emphasis added)).
Diversified also argues that the decision of the Court of Civil Appeals conflicts with Smith v. Medtronic, Inc., 607 So.2d 156 (Ala. 1992), andSystem Dynamics International, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996) (cases the Court of Civil Appeals cited in its unpublished order of affirmance), because the trial court determined that the cause of action had accrued on January 10, 1997, the date the purported mortgage satisfaction was notarized and recorded.
In Smith, this Court reversed a summary judgment for the defendant in a *Page 307 
products-liability action arising from problems with a heart pacemaker. This Court held that the date of discovery of a defective lead, an insulated wire that carries "from a pacemaker to the heart the electric current that regulates or initiates the heart beat," was not controlling because no injury occurred until the defective lead began to deteriorate in such a way as to require surgery. 607 So.2d at 157 n. 2. In Smith, this Court recognized that when an act does not itself cause injury, the statutory limitations period does not begin to run until the first legal injury occurs. 607 So.2d at 159 (citing Garrett v. Raytheon Co.,368 So.2d 516 (Ala. 1979)).
Similarly in Boykin, this Court held that a cause of action against a corporate officer did not accrue until the taxing authority made an assessment against the corporation based upon the authority's disallowing as deductions certain payments the corporation had made to the officer. This Court, holding that no "completed wrong" had occurred until the assessment was made, rejected the officer's argument that the injury had occurred at the time the corporation made the payments. 683 So.2d at 421.
Wilson, however, argues that Diversified's cause of action accrued on January 10, 1997, the date on which the purported mortgage satisfaction was recorded. She claims that on that date the document "called into question the validity of Diversified's mortgage and put the record in the state it was in when Colonial relied on it." Further, she claims that that was the date on which Diversified first had a legal right to maintain an action, because on that date, she says, Diversified could have sued to set aside the satisfaction instrument and to correct the record. Wilson relies on Kelly v. Shropshire, 199 Ala. 602, 604-05,75 So. 291, 292 (1917), in which this Court stated (quoting 25 Cyc. 1136):
 "`If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done. . . . Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.'"
(Emphasis added; bracketed term added in Kelly.)
Wilson argues that this Court has made it clear that the limitations period begins to run from the date on which the legal injury occurs, regardless of whether on that date the plaintiff knows or should know that he has been injured. She claims that in this case Diversified was injured, if at all, on January 10, 1997 — not September 29, 1998, when Colonial intervened in pending litigation to have its mortgage declared superior to that of Diversified. Wilson claims that "the test is when the plaintiff can first maintain an action."
Wilson contends that while Diversified may not have known what the full extent of its damage would ultimately be, it could have maintained an action based upon Wilson's act of notarizing the document purporting to be a mortgage satisfaction — an act that she says caused the alleged legal injury, if any, immediately. Wilson argues that the facts of Boykin and Smith, the cases cited by the Court of Civil Appeals in its unpublished order of affirmance, are significantly different from those of the present case and that the rulings in those cases are not applicable to the issue presented *Page 308 
here. In those cases, the alleged negligent act and the injury did not occur on the same day, as Wilson contends they did in this present case.
In Garrett v. Raytheon Co., supra, 368 So.2d at 518-19, this Court stated:
 "The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action `accrues.' The cause of action `accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon.
". . . .
 ". . . [T]here are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action `accrues,' and the statute of limitation[s] begins to run, `when, and only when, the damages are sustained.'"
(Quoting Kelly v. Shropshire, supra, 199 Ala. at 605, 75 So.2d at 292.) Thus, if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run.
The act that ultimately resulted in the alleged legal injury to Diversified was Wilson's notarization on January 10, 1997, of the purported mortgage satisfaction. In taking a mortgage from Lay on the property on which Diversified held a prior mortgage, Colonial relied on this instrument, which was facially invalid because of its mismatch between the signatory and the description in the acknowledgment. A forged instrument is void. Sheffield v. Andrew, 679 So.2d 1052, 1053 (Ala. 1996). If an instrument is void, then a subsequent innocent purchaser is not protected by relying on it. Bardin v. Grace, 167 Ala. 453, 52 So. 425
(1910). Thus, upon its execution or recordation the void "Full Satisfaction of Mortgage" document should have no efficacy against subsequent purchasers. The rights of Diversified vis-é-vis
Colonial are not before us. However, the fact that the recorded instrument had no legal effect upon Diversified, insofar as persons subsequently dealing with the mortgaged property might be concerned, does bear on the analysis of the timing of Diversified's injury.
A legal injury occurs when the plaintiff can first maintain an action. See Booker v. United American Ins. Co., 700 So.2d 1333, 1339 (Ala. 1997); Smith, supra, 607 So.2d at 159; Garrett, supra, 368 So.2d at 518-19; and Kelly, supra, 199 Ala. at 604-05, 75 So. at 292. The allegations in the complaint suggest that Diversified was the victim of wrongdoing by persons responsible for the making and recording of the forged satisfaction, wrongdoing that included the alleged negligence or wantonness on the part of the notary public, Wilson. In the absence of any evidence indicating that Diversified had prior knowledge of a cloud on its title and evidence indicating that it incurred a loss or an expense as a result of having that knowledge, we must conclude that the earliest that the limitations period could have begun to run on Diversified's claim against Wilson would have been the time when it incurred actual damage as a result of Wilson's actions.
Colonial purchased the property at the foreclosure sale and recorded its foreclosure deed on July 16, 1998. Colonial thereafter, on September 29, 1998, intervened in pending litigation, to assert the *Page 309 
priority of its mortgage. At that time, Diversified was required to defend its title, and its first pecuniary loss occurred. The injury necessary to give rise to a negligence cause of action against Wilson, as notary public, and Universal, as the underwriter of her notary bond, occurred on September 29, 1998, when Colonial intervened and Diversified was required to defend against its claim. The limitations period of two years began to run on that date. Diversified filed its action against Wilson and Universal on February 8, 1999, within two years of September 29, 1998.
We affirm the judgment of the Court of Civil Appeals insofar as it relates to Floyd's claim. We reverse that judgment insofar as it relates to Diversified's claim, and we remand the cause for that court to order further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Houston, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
See and Woodall, JJ., recuse themselves.