This case involves the timeliness of claims alleging that the Monsanto Company and its agents had polluted Lay Lake. Ben L. Payton, Thomas R. Edwards, and Cliassa Edwards (all hereinafter referred *Page 831 
to as "Payton"), on behalf of themselves and a putative class of persons similarly situated, sued Monsanto, Blake Hamilton,[1] and a number of fictitiously named parties (all hereinafter referred to as "Monsanto") on July 15, 1997, alleging that Monsanto and the other defendants are liable for money damages, based on theories of negligence; wantonness; breach of a duty to warn of the inherent dangers of polychlorinated biphenyls ("PCBs"); fraud, misrepresentation and deceit; private and public nuisance; trespass; battery; assault; negligent infliction of emotional distress; intentional infliction of emotional distress (the tort of outrage); strict liability; and breach of riparian rights — all resulting from the pollution of Lay Lake with PCBs.
 I. Background and the Proceedings Below
This action arises from Monsanto's manufacture of PCBs at its facility near Anniston. Payton alleges that Monsanto discharged PCBs into Snow Creek, which flows into Choccolocco Creek, which in turn flows into the Coosa River, which in turn, flows into Lay Lake. The putative class consists of landowners, lessees, and licensees of property located on Lay Lake; the plaintiffs allege on behalf of the putative class various theories of personal injury and property damage resulting from Monsanto's pollution of Lay Lake with PCBs. The plaintiffs allege that Monsanto had improperly discharged PCBs into Snow Creek at various times since the Anniston plant had opened and that even though Monsanto had ceased producing PCBs in the early 1970s, the PCBs from Monsanto's property are continuing to enter the water system that flows into Lay Lake.
After the action took a circuitous route from the circuit court to a federal district court and finally back to the circuit court, and after some preliminary discovery, Monsanto moved for a summary judgment on May 7, 1999. Monsanto asserted two independent grounds for holding that there was no genuine issue of material fact, a holding that would entitle it to a summary judgment. Monsanto claimed 1) that Payton's claims were barred by the statute of limitations and 2) that Payton was trying to recover twice for the same cause of action.
The trial court stated in its order entering a partial summary judgment in favor of Monsanto:
 "[A]ll the plaintiffs' claims based upon actions and damage that allegedly occurred prior to the final disposition of the Comfort case are barred as a matter of law because plaintiffs were compensated in Comfort
for the same PCB related claims they make here. . . . Therefore, defendants are entitled to summary judgment on all plaintiffs' claims based upon any actions and damage that allegedly occurred prior to July 26, 1993."
The trial court further stated that, "given the length of time this case has been pending, the Court believes that plaintiffs should be in a position by now to make at least a prima facie showing of causation," and it ordered Payton to produce "competent evidence of damage (whether personal injury or property damage) caused [the named plaintiffs] and the putative class by actions of the defendants after July 26, 1993." (Emphasis added.)
In response to this order, Payton, while objecting to the court's imposing on him the burden to show the timeliness of his *Page 832 
claims, in view of the absence of evidence offered by Monsanto, submitted various affidavits and deposition testimony. After submission of these evidentiary materials and before the hearing on the remaining issues relating to Monsanto's motion for summary judgment, Monsanto moved to strike the submissions for the lack of evidence of anything Monsanto did after July 1993 to cause any damage, for failure to identify or quantify any post-1993 damages, and the failure to demonstrate any connection between any act of Monsanto and the alleged damage. The trial court held a hearing and thereafter entered a summary judgment for Monsanto. In an order entered after it had entered the summary judgment, the trial court determined that Monsanto's motion to strike was moot. Payton filed a subsequent motion to vacate the summary judgment. Payton offered no additional evidentiary materials but merely restated some of the averments in his affidavits and insisted upon their sufficiency. The trial court denied Payton's motion to vacate, and the present appeal ensued.
 II. The Comfort Settlement and Double Recovery
Monsanto argues that the settlement in Comfort v. Kimberly-Clark Corp. (No. CV-90-616, Shelby Circuit Court) extinguished any claims based on PCB contamination of Lay Lake. Comfort involved the same plaintiffs, but consisted of allegations of environmental pollution directed at Kimberly-Clark Corporation. Although the plaintiff class in Comfort and the putative class in the present action are identical, the gravamen of the complaint, the injuries complained of, and the defendants are distinct. In Comfort, the plaintiffs alleged that a paper mill owned and operated by Kimberly-Clark released dioxins, specifically all cogeners of dibenzo-p-dioxin and dibenzzofuran, including, without limitation, 2,3,7,8-Tetrachlorodibenzo-p-dioxin, into Lay Lake. A settlement was submitted to the trial court on July 26, 1993, releasing Kimberly-Clark from all liability relating to its chemical discharges into Lay Lake. In the settlement agreement, Kimberly-Clark denied all of the material allegations of the complaint.
The basis of Monsanto's defense, that the present action is barred by the legal doctrine that prohibits a double recovery, arises from information submitted by the Comfort plaintiffs in response to a pretrial case-management order, where they listed the chemicals that were to be the basis of their action, one of which was PCBs.
The trial court in the present action entered a summary judgment in favor of Monsanto as to claims for any damages accruing before July 26, 1993, the date of the Comfort settlement. Payton contends that "there is no evidence of damages as a result of PCB contamination until the posting of the fish advisory in 1997, well after the settlement of the case against Kimberly-Clark, a case in which there was no competent evidence of damage to any of the plaintiffs therein by PCBs." Because this contention is inconsistent with any claim for damages based on events occurring before the date of the Comfort settlement, we pretermit further consideration of the summary judgment in favor of Monsanto on its defense to the claims for damages allegedly sustained before the settlement inComfort, and we affirm the trial court's partial summary judgment in favor of Monsanto as to any damages occurring before the settlement of the Comfort litigation.
 III. Standard of Review
The standard by which this Court will review a motion for summary judgment is well established:
 "The principles of law applicable to a motion for summary judgment are well *Page 833 
settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999).
 IV. Statute of Limitations
Payton contends that the trial court erred in entering the summary judgment in favor of Monsanto based upon its assertion of the defense of the statute of limitations. Payton argues that Monsanto did not satisfy its burden under Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986), and that, therefore, the burden was impermissibly placed upon him to oppose Monsanto's motion.
The effect of the rule in Celotex, embraced in Ex parte General MotorsCorp., was considered in greater detail in Beatty v. WashingtonMetropolitan Area Transit Authority, 860 F.2d 1117, 1120-21 (D.C. Cir. 1988), where the court stated:
 "The Supreme Court explained that `a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion,' and that there is an `absence of a genuine issue of material fact.' [Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)]. A motion properly made and supported by the moving party requires that the non-moving party `set forth specific facts showing that there is a genuine issue for trial,' by responding with affidavits, depositions, answers to interrogatories and admissions on file. See Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Although a moving party may not be required to support its motion with affidavits, it is still clear that summary judgment should only be granted in cases when `whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.' Celotex, 477 U.S. at 323, 106 S.Ct. 2553.
 "A close reading of Celotex will reveal that the Court agreed as to the principles embodied in Rule 56 for the granting of summary judgment. Indeed, Justice Brennan, in his dissent, expressly stated that he did not disagree with the majority's legal analysis. See id. at 329, 106 S.Ct. at 2556 (Brennan, J., dissenting). The question presented was whether the defendant, Celotex, the moving party, had satisfied its initial burden of production in moving for summary judgment on the ground that the plaintiff, Catrett, the nonmoving party, *Page 834 
lacked evidence to establish an essential element of her case. It was on the application of the fundamental principles to the particular facts of that case that the court divided.
 "Justice White, who cast the fifth vote to create the majority in Celotex, favored the remand because he believed that the Court of Appeals should reevaluate whether the defendant-movant, Celotex, had met its initial burden of production. It is significant, therefore, that, in his brief concurring opinion, Justice White stated: `the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.' Id. at 328, 106 S.Ct. at 2555 (White, J., concurring). Hence, the crucial question is always whether the pleadings and other submissions `show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c)."
(Emphasis added.)
This Court in Ex parte General Motors Corp., supra, at 909, quoted from Justice Houston's special concurrence in Berner v. Caldwell, 543 So.2d 686,691 (Ala. 1989), where Justice Houston expressed his agreement with Justice Brennan's dissent in Celotex, and stated:
 "The manner in which the movant's burden of production is met depends upon which party has the burden of proof (Justice Brennan's `burden of persuasion') at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the material specified in Rule 56(c), [Ala.] R. Civ. P. (`pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits')."
(Emphasis added.) This Court held in Ex parte General Motors Corp. that "Justice Houston's special concurrence in Berner accurately states the law." 769 So.2d at 909.
Before the trial court, Payton timely raised the issue of Monsanto's failure to meet its initial burden of proof on its defense of the statute of limitations, claiming that it was inappropriate to shift the burden to him to defeat Monsanto's motion for summary judgment. Consequently, this argument is available to Payton on appeal.
Principles governing burden of proof at trial and accrual of causes of action are therefore dispositive. Turning to burden of proof, we note that when it appears from the face of the complaint that the plaintiff's claim is time-barred, the defendant is entitled to a dismissal based upon the defense of the statute of limitations, without the necessity of offering any proof. See Travis v. Ziter, 681 So.2d 1348 (Ala. 1996). However, the plaintiff can overcome a defense of limitations by averment and proof of circumstances permitting tolling of the running of the limitations period, such as fraud on the part of the defendant in concealing the wrongdoing, see Parsons Steel, Inc. v. Beasley,522 So.2d 253 (Ala. 1988), or estoppel by reason of unfulfilled promises of the defendant in exchange for the plaintiff's agreement to postpone commencement of an action, see Sokol v. Bruno's, Inc., 527 So.2d 1245
(Ala. 1988). In those instances, the burden of proof is on the plaintiff to overcome the defense of limitations. See Parsons Steel, Inc., supra. When the action is not time-barred on the face of the complaint, the defendant seeking a judgment of dismissal based upon the affirmative defense of limitations has the burden of proof. See Mobile Infirmary v.Delchamps, 642 So.2d 954 *Page 835 
(Ala. 1994). While Payton's complaint alleges ongoing wrongful conduct, it also alleges fraudulent concealment that could justify tolling the running of the limitations period. However, Payton offered no evidence in opposition to Monsanto's summary-judgment motion that would support the tolling of the running of the limitations period and Payton does not argue on appeal that the limitations period should be tolled. We therefore affirm the summary judgment for Monsanto insofar as it holds that the running of the limitations period was not tolled.
We now turn to the remaining issue involving the statute-of-limitations defense as to which Monsanto would bear the burden of proof at trial. We note that Alabama law does not recognize a continuing tort in instances where there has been a single act followed by multiple consequences.[2]
The fact that a plaintiff discovers damage for the first time outside the limitations period does not save the plaintiff, because this Court has declined to apply a "discovery rule." See Ramey v. Guyton, 394 So.2d 2
(Ala. 1980).
Recently, in Ex parte Floyd, 796 So.2d 303 (Ala. 2001), this Court addressed the question when the statute of limitations begins to run when the date of the act differs from the date of the injury. This Court there recognized the settled law to be as follows:
 "In Garrett v. Raytheon Co., [368 So.2d 516 at 518-19 (Ala. 1979)], this Court stated:
 "`The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action `accrues.' The cause of action `accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon.
"`. . . .
 "`. . . [T]here are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues," and the statute of limitation[s] begins to run, "when, and only when, the damages are sustained."'
 "(Quoting Kelley v. Shropshire, supra, [199 Ala. 602
at 605, 75 So. 291 at 292 (1917)]. Thus, if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run."
796 So.2d at 308.
Monsanto argues that the applicable statutes of limitations commenced to run in October 1990 when the plaintiffs in this action filed a prior class-action complaint seeking damages from Kimberly-Clark and other defendants for, among other things, PCB pollution. Because, as *Page 836 
previously noted, this record does not permit Payton to pursue any damages based on harm occurring before the Comfort settlement on July 26, 1993, we review the issue of the defense of limitations with reference to the date of the commencement of this action, July 15, 1997.
The complaint in this action avers conduct on the part of Monsanto beginning in the early 1930s that continued until the time of the commencement of the action. However, as previously noted, Payton contends that damages occurred no earlier than 1997. Payton further contends that his evidentiary submission establishes conduct on the part of Monsanto occurring within the period covered by the action and that, in all events, the statute of limitations did not commence to run until 1997, when the first injury, in the form of a fish advisory, was published.
Monsanto argues that the applicable limitations period commenced to run in October 1990, when the plaintiffs in this action filed a prior class-action complaint seeking damages from Kimberly-Clark and other defendants for, among other things, PCB pollution. Monsanto would thus have us review the trial court's summary judgment on the issue of the statute of limitations, based upon an analysis of the sufficiency of plaintiff's expert evidence on the issue of conduct and damage within six years or two years of July 15, 1997.
Monsanto has offered no evidence contradicting the allegations of Payton's complaint that wrongful conduct continues. While Monsanto has offered evidence suggesting that hazardous levels of PCBs were present in Lay Lake before the period of limitations applicable to this action based upon the discovery in the Comfort litigation, such evidence does not negate the allegations of Payton's complaint describing continuing discharge of PCBs as of the time of the commencement of this action. Based on the previously stated rules of accrual of action, the complaint could survive a defense of limitations by proof of conduct occurring within the limitations period. Of course, the affirmance of Monsanto's partial summary judgment as to the Comfort litigation could not cut off Payton's right to claim damages for acts occurring before the settlement but first causing injury thereafter. See Ex parte Floyd, supra.
Because Monsanto bears the burden of persuasion at trial, a naked motion for summary judgment unsupported by averment or reference in the record refuting the allegations in the complaint of continuing discharge of PCBs as of the commencement of this action is insufficient to shift to Payton the burden of demonstrating that substantial evidence supports the allegations of his complaint. See Ex parte General Motors, supra. We therefore do not reach the sufficiency of Payton's evidentiary materials in response to that aspect of Monsanto's motion for summary judgment based upon the defense of the statute of limitations.
 V. Conclusion
That portion of the judgment that precludes Payton's recovery for damage occurring before the settlement of the Comfort litigation and that rejects any claims based on tolling of the statute of limitations, is affirmed; the remainder of the summary judgment is reversed. The action is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] Blake Hamilton is the current plant manager at Monsanto's Anniston facility, and he is named in that capacity.
[2] Moon v. Harco Drugs, Inc., 435 So.2d 218, 220-21 (Ala. 1983), discusses the concept of "continuous tort," describing it as a defendant's liability for repeated wrongs to the plaintiff. Then, the Court offers several illustrations, including "when a plaintiff landowner seeks damages for the contamination of a well or stream." Id. at 221. However, the three cases cited to support this proposition involve repetitive acts or ongoing wrongdoing; Howell v. City of Dothan,234 Ala. 158, 174 So. 624 (1937) (ongoing discharge of sewage), EmployersInsurance Co. of Alabama v. Rives, 264 Ala. 310, 87 So.2d 653 (1955) (opinion refers to repetitive acts), Alabama Fuel Iron Co. v. Vaughn,203 Ala. 461, 83 So. 323 (1919) (damage resulting from the ongoing operations of a coal mine). *Page 837