YATES, Presiding Judge.
Rhonda Kimbrell appeals from a summary judgment entered in favor of Progas, Inc. Kimbrell sued Progas, claiming that Progas was negligent in not having conducted an interior inspection of her home when it installed a propane tank at her residence. Kimbrell’s claims are based upon theories of negligent installation, negligent inspection, negligence per se, and breach of contract. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
In May 1998, Kimbrell entered into an agreement with Progas to establish propane gas service at her residence. The propane tank was installed on May 13, and on May 31, 1998, her residence burned as a result of a fire fueled by a propane gas leak. Gordon Nelson, the manager of Pro- *1228 gas, stated in his deposition that Kimbrell had purchased a propane tank from a Pro-gas coworker, Ernie Clay, and that he and Clay had delivered the tank, installed it, and connected it to an existing gas line. Nelson testified that no one was home on the day the tank was installed and that, because no one was home, he and Clay had not turned the gas on at the tank. Nelson also testified that Progas conducted no inspection inside the house and that he did not leave a note warning Kimbrell not to turn the gas on before an inspection was conducted. Nelson also stated that normally an inspection is conducted inside a house before gas is introduced into a system. Nelson further testified that on May 21, 1998, he and Clay had returned to the Kimbrell residence and had repaired a gas leak located at the propane tank outside the home, and that neither he nor Clay went inside to inspect the system. Nelson stated that he and Clay offered to inspect the system, but they failed to tell Kimbrell that they were required to conduct an inspection. Nelson then testified that it was Progas’s standard practice to depend on the property owner to inspect the system inside the home.
Kimbrell testified that on May 18, 1998, Progas installed a gas tank and began gas service to her residence. She further stated:
“When I next came to the house which I believe was either that same day, or the next, the new gas tank and lines were already installed. The gas was not turned on. I turned the gas on by twisting a knob on the tank.... There was no tag of any sort or color on the tank, on the doors going into my house or anywhere that I might have noticed there at the house.”
Kimbrell also stated that no one from Pro-gas notified her that someone needed to come inside her house to inspect the gas system. On May 31, 1998, an explosion occurred at her residence; she and her son escaped unharmed, but the house and its contents were totally destroyed by the fire. An investigation revealed that a gas leak in the laundry room was the cause of the fire.
James Munger, an expert in fuel-gas systems, testified that in 1998 the National Fuel Gas Code, a safety code that applies to the installation of fuel gas piping systems and that has been adopted by the Alabama Liquefied Petroleum Gas Board, contained a provision that required that the system be inspected before gas was introduced into Kimbrell’s house. Specifically, the provisions state:
“4.2.1 Before Turning Gas On. Before gas is introduced into a system of new gas piping, or back into an existing system after being shut off, the entire system shall be inspected to determine that there are no open fittings or ends and that all manual valves at outlets on equipment are closed and all unused valves at outlets are closed and plugged or capped.
“4.2.2 Test for Leakage. Immediately after the gas is turned on, the piping system shall be tested to ascertain that no gas is escaping. If leakage is indicated, the gas supply shall be shut off until the necessary repairs have been made.”
According to Munger, Progas failed to comply with the industry standards before introducing gas into Kimbrell’s home.
Our standard of review of a summary judgment is well settled:
“ ‘The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When *1229 the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present “substantial evidence” creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12(d)[,] Ala.Code 1975. Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a fight most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).’ ”
Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).
Considering the evidence most favorably to Kimbrell, we conclude that Kimbrell presented substantial evidence creating a genuine issue of material fact and that the summary judgment was not proper. Accordingly, we reverse the trial court’s judgment for Progas and remand the case for further proceedings.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur in the result.