Nancy Cooks sued the City of Mobile ("the City") on April 27, 2001, alleging that the City had negligently issued a building permit to Michael Cox and that its negligent issuance of that permit caused her to sustain property damage and to suffer mental anguish. On May 18, 2001, the City moved the trial court to dismiss Cooks's complaint; the trial court denied that motion. Cooks amended her complaint on May 23, 2003, alleging specifically that the City had negligently issued Cox a building permit by failing to require that Cox produce either a contractor's license or proof that he was the owner of the property on which the construction was to take place, in accordance with § 34-14A-1 et seq., Ala. Code 1975. The City answered Cooks's complaint on November 8, 2001, raising as defenses, among other things, the doctrines of substantive immunity and sovereign immunity. The City also contended that Cooks failed to timely notify the City of her claim pursuant to §11-47-23, Ala. Code 1975.
On November 29, 2001, the City moved for a summary judgment arguing that it was immune from liability based on the doctrines of substantive and sovereign immunity and arguing further that Cooks's claim was barred because she failed to notify the City of her claim pursuant to § 11-47-23, Ala. Code 1975. The trial court denied the City's motion on January 16, 2002. Thereafter, the City petitioned this Court for a writ of mandamus, which this Court denied by order on March 21, 2002. Ex parte City ofMobile (No. 1011021).
The case proceeded to trial on September 29, 2003. The City moved the court for a preverdict judgment as a matter of law ("JML") at the close of Cooks's case and again at the close of all the evidence. The trial court denied both motions. The jury returned a verdict in favor of Cooks awarding her $32,500 in compensatory damages and $45,000 for mental anguish. The City filed a postverdict motion for a JML or, in the alternative, for a new trial. The trial court denied the City's motion and on October 1, 2003, entered a judgment based on the jury's verdict. The City appeals.
This Court has stated:
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present `substantial evidence' in order to withstand a motion for a JML. See *Page 31 
§ 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala. 1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992)."
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-831 (Ala. 1999).
The facts established at trial are as follows. In 2000, Cooks decided to build an addition to her house located in Mobile, and she received bids from several contractors to complete the addition. Cox, doing business as M.A. Cox and Associates, submitted a bid to Cooks for the proposed construction of the addition. Cooks testified that she told Cox that before she could enter into a contract with him, she needed to see his contractor's license, proof that he was bonded, and proof that he had workers' compensation and liability insurance coverage. Cox represented himself to Cooks as a licensed contractor and submitted the requested documents to her. However, Cox was in fact not a licensed contractor, and the documents he submitted to Cooks were fake.
Cooks entered into a contract with Cox on June 16, 2000, for the construction of the addition to her house. The contract was contingent upon Cox's obtaining a building permit from the City. Cooks paid Cox $4,898.70 at the time she and Cox executed the contract. After the contract was executed, Cox visited the City's central permitting office to obtain the building permit.
Section 34-14A-13, Ala. Code 1975, provides in part:
 "It is the duty of the building official, or other authority charged with the duty, of issuing building or similar permits, of any incorporated municipality or subdivision of the municipality or county, to refuse to issue a permit for any undertaking which would require a license hereunder unless the applicant has furnished evidence that he or she is either licensed as required by this chapter or is exempt from the requirements of this chapter."
Property owners need not be licensed in order to obtain a building permit "when acting as their own contractor and providing all material supervision themselves, when building or improving one-family or two-family residences on such property for the occupancy or use of such owners and not offered for sale." § 34-14A-6(5), Ala. Code 1975. To obtain a building permit in June 2000, the City required a contractor to present a contractor's license and proof that the contractor was bonded. However, the City did not require that a person purporting to be a property owner produce any corroborating identification in order to obtain a building permit.
Cox approached Tommy Reynoso, an employee of the City's central permitting office, to request the building permit for the addition to Cooks's house. Cox represented himself to Reynoso as "Reverend Cooks" and represented that he owned the house upon which the addition was to be constructed. He signed the permit application "Reverend Cooks." Reynoso did not require Cox to produce any identification or other evidence indicating that he *Page 32 
actually owned the house upon which the addition was to be constructed. The City issued the building permit jointly to "Reverend and Mrs. Cooks" on June 19, 2000. Cox then altered the building permit so that it appeared that it was issued to "M.A. Cox and Associates" as the contractor. He presented the altered building permit to Cooks, and she tendered him a second payment of $4,898.70 on June 19, 2000. Cox began construction of the addition to Cooks's house on June 21, 2000.
Cooks financed the construction project with moneys she had saved. Cooks made several partial payments to Cox as he completed various stages of the construction. She made a payment of $2,202.80 on June 30, 2000, after Cox had completed the foundation for the addition and after the City inspector had approved it. Cooks made a payment of $5,391.40 on July 8, 2000, after construction of the flooring system had been completed and approved by the City inspector. Cooks made another payment of $2,644.55 on July 13, 2000, after the construction of the walls had been completed and approved by the City inspector. She also made a payment of $5,964 on July 21, 2000, after Cox completed framing the roof and after the roof had been approved by the City inspector. It is undisputed that Cox received all these payments.
On July 24, 2000, Cooks became concerned about the quality of the workmanship on the addition to her house. She contacted the City and requested a "walk-through" of the addition. Cooks informed a City employee that Cox was her contractor. The City employee informed Cooks after a search of the records that no building permit had been issued to Cox. Kevin O'Shea, a City building inspector, and Charles May, a compliance officer for the Homebuilder's Licensure Board, were dispatched by the City to Cooks's house. Both O'Shea and May issued "stop work orders" to Cox on July 24, 2000, for failing to obtain a proper building permit and for failing to have a proper license issued by the Homebuilder's Licensure Board. Additionally, O'Shea issued Cox a municipal-offense ticket for failing to properly obtain a building permit. A subsequent inspection of the addition by the City revealed numerous violations of the City's building code. The City recommended that the addition be torn down and reconstructed.
Cooks contracted with other contractors to tear the addition down and to reconstruct it. She testified that she was unable to complete construction of the addition before she ran out of money. Cooks stated that at the time of trial her house was uninhabitable. The City pursued a criminal claim against Cox on behalf of Cooks, and he was ordered to pay approximately $41,000 in restitution to Cooks. The evidence presented at trial indicated that she had received approximately $30,000 in restitution from Cox over a three-year period. However, she testified that most of that money was used for living expenses because she was displaced from her home. Cooks then sued the City.
The City argues that Cooks failed to file a notice of her claim with the City within six months of the accrual of that claim and that, therefore, her claim is barred by § 11-47-23, Ala. Code 1975. Because this issue is dispositive of this appeal, we need not address the immunity issues.
Section 11-47-23, Ala. Code 1975, provides:
 "All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented *Page 33 
within six months from the accrual thereof or shall be barred."
Cooks filed her notice of claim with the City on January 19, 2001. The City argues that Cooks's claim accrued on June 19, 2000, the date the building permit was issued to Cox, and, therefore, that the notice of claim filed on January 19, 2001, is barred by the six-month provision of § 11-47-23. Cooks argues that her claim against the City accrued on July 24, 2000, the date the "stop work" order was issued, and, therefore, that her notice of claim filed on January 19, 2001, is timely.
A cause of action accrues under § 11-47-23 when an action can be maintained. Couch v. City of Sheffield, 708 So.2d 144 (Ala. 1998); Hill v. City of Huntsville, 590 So.2d 876 (Ala. 1991). This Court has stated the following with regard to when a cause of action accrues:
 "`The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action "accrues." The cause of action "accrues" as soon as the party in whose favor it arises is entitled to maintain an action thereon.
"`. . . .
 "` . . . [T]here are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues," and the statute of limitation[s] begins to run, "when, and only when, the damages are sustained.'"
 "(Quoting Kelley v. Shropshire, [199 Ala. 602, 605, 75 So. 291, 292 (1917)].) Thus, if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run."
Ex parte Floyd, 796 So.2d 303, 308 (Ala. 2001) (quotingGarrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala. 1979) (emphasis added)).
In this case, the act complained of by Cooks was the City's issuance of the building permit to Cox on June 19, 2000. The record indicates that the construction contract entered into between Cooks and Cox was contingent upon Cox's obtaining a building permit from the City. After Cox obtained the building permit, he presented it to Cooks on June 19, 2000, and she tendered him a check at that time in the amount of $4,898.70. It is at that time that Cooks first sustained a legal injury, and she had six months from that date to file her notice of claim with the City. Thus, her notice of claim filed on January 19, 2001, was untimely and her action is barred by the six-month provision found in § 11-47-23, Ala. Code 1975.
Accordingly, the judgment of the trial court is reversed, and the case is remanded for the trial court to enter a judgment as a matter of law for the City.
REVERSED AND REMANDED WITH DIRECTIONS.
NABERS, C.J., and SEE, HARWOOD, and STUART, JJ., concur. *Page 34